The document below is hereby signed. Dated: July 25, 2011.



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
MARGARET ANNE NICHOLSON,       )   Case No. 09-00188
                               )   (Chapter 13)
              Debtor.          )
```

MEMORANDUM DECISION RE OBJECTION TO AMENDED CLAIM
OF REAL TIME RESOLUTIONS, INC. AND TRUSTEE'S MOTION TO
<u>MODIFY PLAN IF THE CLAIM IS ALLOWED AND NOT TO BE PAID DIRECTLY</u>

The debtor, Margaret Anne Nicholson, has objected to the amended claim of Real Time Resolutions, Inc. filed by Real Time as assignee of GMAC Mortgage, LLC.  For ease of discussion, I will treat Real Time and GMAC as one and the same and refer to them as Real Time.  Nicholson asserts that Real Time's claim was satisfied via Nicholson's confirmed plan having called for the claim to be paid by surrender.  The objection will be overruled.

The trustee has moved to modify the plan to increase plan payments in order to pay Real Time's claim based on the trustee's assumption that the unsecured claim, if allowed, was to be paid via disbursements by her of plan payments.  That motion will be denied because the confirmed plan provided that the claim, as a long-term debt, was to be paid directly by Nicholson and not

through plan payments administered by the chapter 13 trustee.

I

On the petition date, Nicholson owned real property on 26th Street, NE, in Washington, D.C.  According to Real Time's original claim, Real Time was owed $62,518.49 secured by a lien on that property.  Real Time's original proof of claim asserted that its claim was fully secured.  Nicholson's schedules, however, reveal that another creditor, Indymac, had a first lien on the property securing a debt ($264,015.00) in excess of the $260,000 scheduled value of the property.  OneWest Bank, FSB, as successor-in-interest to Indymac, filed a proof of claim for a claim secured by a lien on the property in an amount ($263,253.30) similar to the amount listed by Nicholson as owed to Indymac.  For ease of discussion, I will treat OneWest and Indymac as one and the same, and refer to them as OneWest.

Nicholson's plan (a third amended plan) was confirmed on June 14, 2009.  Paragraph B of the confirmed plan included a "Direct Payments" paragraph, which provided:

> THE DEBTOR SHALL PAY DIRECTLY THE FOLLOWING CLAIMS, TO THE EXTENT THEY ARE 11 U.S.C. §1322(b)(5) CLAIMS (THE FINAL PAYMENT UNDER THE PLAN BEING TREATED AS DUE IN 60 MONTHS) OR ARE ALLOWED SECURED CLAIMS (SUBJECT TO THE PROVISIONS OF HANGING PARAGRAPH OF 11 U.S.C. §1325(a)(5), IF APPLICABLE) AND CLAIMS ARISING FROM THE FOLLOWING LEASES WHICH THE DEBTOR HEREBY ASSUMES:
>     Bank of America
>     National City Mortgage
>     [OneWest]-claim to be paid by surrender
>     [Real Time]-claim to be paid by surrender

Later, in September 2009, OneWest obtained relief from the automatic stay to foreclose its lien on the property. In April 2011, Real Time filed an amended proof of claim asserting $62,518.49 as an unsecured claim. That claim is proof that Real Time has no collateral securing its claim. I infer, in the absence of any other explanation by Nicholson, that the property was sold at foreclosure by OneWest, and that no excess proceeds were realized to apply to the lien of Real Time.

II

Nicholson contends that the confirmed plan binds Real Time, and that the claim was satisfied via surrender, citing *In re Stansbury*, 403 B.R. 741 (Bankr. M.D. Fla. 2009).

The debtor was required to complete her plan within five years. Real Time's note was a 15-year mortgage for which the last payment was due in 2021. Accordingly, its claim was a section 1322(b)(5) claim (as a claim "on which the last payment is due after the date on which the final payment under the plan is due"). Real Time's original proof of claim treated its claim as a fully secured claim, and (until the proof of claim was amended) it was allowed as such because no one objected to the claim. However, Nicholson's schedules and OneWest's foreclosure against the property demonstrated that Real Time's claim was actually an unsecured claim within the meaning of 11 U.S.C.

3

§ 506(a).[1]

If Real Time's claim had not been a § 1322(b)(5) claim (a claim whose last payment was due after the final plan payment was due), Real Time would have had no claim that was to be treated under the confirmed plan's Direct Payments paragraph.  Instead, it would only have had a claim (as reflected by its amended proof of claim) that is a fully unsecured claim and not an allowed secured claim under 11 U.S.C. § 506(a), and the Direct Payments paragraph would not have applied to the claim.  The issue is thus whether the "claim to be paid by surrender" language meant that Real Time's unsecured claim, as a § 1322(b)(5) claim governed by the Direct Payments paragraph, is to be deemed paid by way of Real Time's coming up empty handed at OneWest's foreclosure sale (a sale that resulted in no sale proceeds being paid to Real Time).

Like Real Time, OneWest filed its claim as a fully secured claim.  Nicholson's plan provided that the claims of Real Time and OneWest were to be paid directly, and indicated as to each that "claim to be paid by surrender."  The plan did not say "claim to be paid by surrender of collateral" and thus can be viewed as Nicholson's paying the claims via her surrendering to

---

[1] Section 506(a) provides in relevant part that a creditor's claim secured by a lien on the debtor's property "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ."

4

the processes of nonbankruptcy law applicable to how such claims are paid.  When a plan does provide for surrender of collateral, that means surrendering the collateral to the processes of nonbankruptcy law.  *See In re Kasper*, 309 B.R. 82, 86, 91 (Bankr. D.D.C. 2004).[2]  Similarly, when a plan provides for a claim to be paid via surrender, without limiting surrender to surrender of collateral, the reasonable interpretation is that the claim's payment is being subjected to whatever processes of nonbankruptcy law are available to the creditor.  Nicholson surrendered to Real Time's right to enforce any unsecured claim that remained after a foreclosure sale, not just Real Time's right to enforce a

---

[2] *See also In re Heflin*, 2010 WL 1417776, *1 (Bankr. E.D. Va.  Apr. 1, 2010) (where property is surrendered under a plan, the secured creditor "is free to enforce its lien in accordance with applicable non-bankruptcy law"); *In re Hughes*, 402 B.R. 404 (Bankr. M.D. Fla. 2008) ("The Bankruptcy Code is silent as to the manner in which the holder of an allowed secured claim may dispose of collateral surrendered pursuant to Section 1325(a)(5)(C).  Non-bankruptcy law and the underlying documents control the disposition of surrendered collateral." (citation omitted)).

Surrender of collateral does not mean physical delivery of collateral.  *See Pratt v. General Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 18-19 (1st Cir. 2006) (citing *In re Cornejo*, 342 B.R. 834, 836-37 (Bankr. M.D. Fla. 2005)); *In re Kasper*, 309 B.R. at 91-92 n.16.  Nor can the plan be viewed as an "eat dirt" plan under which a creditor is forced to take a deed in lieu of foreclosure to satisfy its claim.  The plan gives no indication that such was intended, and, in any event, it calls for surrender as to both OneWest's first lien and Real Time's junior lien, and there could be no deed conveying title to both creditors in lieu of foreclosure.

5

worthless lien.  Accordingly, the plan did not limit Real Time to enforcement of its *in rem* rights against the real property.

Moreover, as reflected by her schedules, Nicholson was well aware that a foreclosure by OneWest would likely not generate sufficient proceeds to pay anything to Real Time as the junior lienor.  The plan provided for Real Time's claim to be paid directly, and Nicholson cannot with a straight face contend that such direct payment was to be accomplished by enforcement of a lien that was worthless because of OneWest's superior lien.[3]

The language "to be paid by surrender" permitted foreclosure (a meaningless remedy in the case of Real Time's worthless lien) but did not limit payment to payment via foreclosure.  Under nonbankruptcy law, a result of a foreclosure sale is that any amounts owed the foreclosing creditor or junior lienors that remain unpaid after the foreclosure sale can be pursued via nonbankruptcy law processes applicable to unsecured claims.  By providing for the claim "to be paid by surrender," Nicholson surrendered to all nonbankruptcy law processes available for payment of the debt.

---

[3]  If Real Time had no lien (the equivalent of what it actually had, a worthless lien), and its claim remained a long-term debt payable by Nicholson directly, the provision for its claim to be paid by surrender could not mean by way of surrender of non-existent collateral.  Similarly, the plan cannot mean that Real Time's claim was to be paid by way of surrender of the 26th Street property to enforcement of Real Time's worthless lien.

6

This case is not like *In re Stansbury*. In that case, the debtor's plan provided that:

> Property to Be Surrendered to Secured Creditor in full satisfaction of claim (property not subject to valuation under 11 U.S.C. § 506(a)):
>
> Creditor:
> CNL
>
> Account No.: 320000254
>
> Collateral:
> corporate property (not in Debtors' personal name) located at: 317 Minorka Avenue, St. Augustine, Florida

*In re Stansbury*, 403 B.R. at 744. Moreover:

> According to Exhibit "A" attached to the Order Confirming Plan, the Bank's collateral was to be surrendered, the allowed amount of the Bank's claim was "$0.00," and no payment was to be made to the Bank under the Plan.

*Id.* The plan and confirmation order in *In re Stansbury* could not have been clearer that the creditor's claim was to be satisfied by way of identified collateral and that the creditor would otherwise have no claim in the case. Here, in contrast, Nicholson's confirmed plan did not provide that Real Time's claim was to be satisfied only via surrender of the property to Real Time. Moreover, OneWest's claim was also "to be paid by surrender," and the value of the property was such that only OneWest would receive any payment via foreclosure. The only reasonable interpretation of the plan was that payment via surrender (without specifying that it was via surrender of a property), permitted foreclosure but also included payment via

7

Nicholson's surrender to other nonbankruptcy law processes (including the possibility of Real Time agreeing to Nicholson's continuing to pay the debt in monthly installments over the existing 15-year schedule).  In any event, if the language at issue is ambiguous, the language ought to be construed against Nicholson as the author of the plan.

III

The issue remains whether the unsecured claim owed to Real Time is still to be treated under the confirmed plan's Direct Payments paragraph.  Even though Real Time's collateral no longer serves as collateral for the debt, and Real Time has no allowed secured claim that must be paid directly, the terms of the promissory note called for the debt to be paid long after plan payments were completed.  No one has suggested that Real Time had accelerated the debt prior to confirmation of Nicholson's plan.[4]  That Real Time may accelerate the debt based on the collateral no longer being in place, and based on Nicholson's having

---

[4] Even if the debt *had* been accelerated, § 1322(b)(5) allows a debtor to cure defaults and to de-accelerate the debt. *See, e.g.*, *Clark v. Fed. Land Bank of St. Paul (In re Clark)*, 738 F.2d 869, 874 (7th Cir. 1984).  The debtor's plan did not call for a cure of any existing default, but no one objected that § 1322(b)(5) could not be invoked because the plan did not call for a cure of existing defaults.  Nor did anyone object that surrendering the claim to collection via nonbankruptcy law processes, including acceleration, is inconsistent with what § 1322(b)(5) authorizes ("curing of any default within a reasonable time and maintenance of payments while the case is pending").

surrendered the collection of the debt in accordance with nonbankrupcty law, is not a basis for treating the Direct Payments paragraph of the confirmed plan as not controlling the payment of the claim.  Real Time could elect to continue to accept payments over time.  Even if it does not so elect, the debt was a long-term debt on the petition date, as of the filing of the proof of claim, and as of confirmation of the plan.  The claim's treatment was governed by the plan's Direct Payments paragraph, and that treatment remains binding for reasons explored below.

Note first, however, that Real Time's holding a lien did not bind it to treatment under the plan's Direct Payment paragraph.  Nicholson's confirmed plan did not purport to fix the amount of any secured claim of Real Time, and thus had no binding effect in that regard.  Because Real Time's lien was worthless, the trustee could have successfully objected to treatment of Real Time's claim as a secured claim under § 506(a).  Similarly, Real Time was free to file an amended claim showing that its claim was not a secured claim under § 506(a).  Its amended claim, and the results of the foreclosure sale by OneWest, were consistent with the debtor's schedules' showing that, under § 506(a), the claim could not be treated as a secured claim.  Because Real Time did not have a claim entitled under § 506(a) to treatment as a secured claim at any time, treatment of the claim (or any part of

9

it) under the Direct Payments paragraph cannot be justified based on that paragraph being applicable to any allowed secured claim of Real Time.

In contrast, that the claim was a long-term debt at the time of confirmation would not be changed by any later election by Real Time to accelerate the due date of the debt.  Section 1322(b)(5) contemplates that a debtor can elect to deal with such long-term debts directly by providing for curing any default and then maintaining payments directly, without the claim being paid via payments by the chapter 13 trustee.  If a debtor makes that election in a confirmed plan, the treatment of the claim is not altered by the debtor's later being unable to continue maintaining contractually-due payments to the creditor, and by the creditor's accelerating the debt.  Instead, the creditor can seek relief from the automatic stay to enforce its claim based on the debtor's default in maintaining payments.  Such a creditor's amended proof of claim, showing an accelerated debt now due, would not, and cannot, alter the long-term character that the debt embodied when the plan was confirmed, a character that allowed the debtor to provide under the confirmed plan that the claim would be paid directly and not via payments from the chapter 13 trustee.

Because Real Time's unsecured claim remains subject to the confirmed plan's Direct Payments paragraph, it will not be paid

via payments from the chapter 13 trustee. Accordingly, there is no need to increase plan payments, and the chapter 13 trustee's motion to modify will be denied.

IV

Nicholson may wish to have Real Time's claim dealt with by a plan in this case so that it is discharged. She indicates, however, that the current confirmed plan, which provides for full payment of allowed unsecured claims, would not be feasible if Real Time's claim were required to be paid under the current plan. The vehicle for addressing Real Time's claim pursuant to a plan that does not provide for full payment of allowed unsecured claims is a motion to modify the plan to change the treatment of Real Time's claim and the treatment of other allowed unsecured claims. I express no views on whether such a motion would be granted.

V

Orders follow overruling Nicholson's objection to the claim of Real Time and denying the trustee's motion to modify the plan.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification;

Real Time Resolutions, Inc.
Agent for GMAC
1750 Regal Row
Suite 120
Dallas, TX 75235

11